# In the United States Court of Federal Claims

No. 23-1013, 23-1118
(consolidated)
(Filed Under Seal: December 4, 2023)
Reissued: December 19, 2023[1]

|  |  |
|---|---|
| FLUOR FEDERAL SERVICES, INC., | ) |
| Plaintiff, | ) |
| and | ) |
| CDM FEDERAL PROGRAMS CORP., | ) |
| Consolidated Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AECOM TECHNICAL SERVICES, INC., | ) |
| Defendant-Intervenor. | ) |

*Scott Patrick Fitzsimmons*, Watt, Tieder, Hoffar & Fitzgerald, LLP, McLean, VA, for plaintiff.

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, DC, for consolidated plaintiff.

*Elinor Joung Kim*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Kevin Patrick Mullen*, Morrison & Foerster LLP, Washington, DC, for defendant-intervenor.

**OPINION**

***SMITH*, Senior Judge**

---

[1] An unredacted version of this opinion was issued under seal on December 4, 2023. The parties were given an opportunity to propose redactions, and those redactions are included herein.

This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record.  Plaintiff, Fluor Federal Services, Inc. ("Fluor"), and consolidated plaintiff, CDM Federal Programs Corp. ("CDM"), challenge the award to defendant-intervenor, AECOM Technical Services, Inc. ("AECOM"), by the Federal Emergency Management Agency ("FEMA" or the "Agency") for services in support of its Public Assistance Consolidated Resources Center program under Request for Quotation No. 70FB8021Q00000019 (the "Solicitation").  *See generally* Plaintiff's Complaint, ECF No. 1 [hereinafter Fluor's Compl.]; Consolidated Plaintiff's Complaint, Case No. 23-1118, ECF No. 1 [hereinafter CDM's Compl.][2]; *see also* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 38 [hereinafter Fluor's MJAR]; Consolidated Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 40 [hereinafter CDM's MJAR].  Both plaintiffs challenge the Agency's evaluation of their respective bids, alleging that FEMA contravened the stated Solicitation terms.  *Id.*  Specifically, Fluor challenges (1) the Agency's issuance of a single award, and (2) the Agency's evaluation under the stated Solicitation requirements, alleging that the Agency conducted an improper tradeoff analysis and failed to consider close-at-hand information.  In contrast, CDM claims that the Agency (1) failed to follow the Solicitation's stated evaluation scheme, (2) erred in its past performance and technical evaluation, and (3) breached the implied duty to fairly and honestly consider CDM's proposal.

In response, defendant argues that some claims made by plaintiffs are untimely, and the remaining claims should fail on the merits because the Agency's evaluation was reasonable and comported with the stated Solicitation criteria.  *See generally* Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record, ECF No. 46 [hereinafter Def.'s Resp. to Fluor]; Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record, ECF No. 47 [hereinafter Def.'s Resp. to CDM].  Defendant-intervenor moves to dismiss Fluor's challenge to the Agency's single-award contract as untimely, *see* Defendant-Intervenor's Partial Motion to Dismiss, ECF No. 25 [hereinafter Def.-Int.'s MTD], and contends that the Agency reasonably awarded the contract to AECOM, arguing much the same as defendant, *see generally* Defendant-Intervenor's Response to Plaintiff's Motion for Judgment on the Administrative Record, Cross-Motion for Judgment on the Administrative Record, and Reply in Support of its Motion to Dismiss, ECF Nos. 44 [hereinafter Def.-Int.'s Resp. to Fluor]; Defendant-Intervenor's Response to Plaintiff's Motion for Judgment on the Administrative Record, Cross-Motion for Judgment on the Administrative Record, and Reply in Support of its Motion to Dismiss, ECF Nos. 45 [hereinafter Def.-Int.'s Resp. to CDM].  For the reasons set forth below, the Court grants defendant and defendant-intervenor's Cross-

---

[2]     Plaintiff Fluor and Consolidated Plaintiff CDM filed bid protests independent of one another on June 30, 2023, and July 19, 2023, respectively.  Fluor's protest was docketed as Case No. 23-1013 and CDM's protest was docketed as Case No. 23-1118.  In the interest of judicial economy, the Court consolidated the cases and directed all filings to be made in Case No. 23-1013.  *See* July 26, 2023 Order, Case No. 23-1013, ECF No. 27; July 26, 2023 order, Case No. 23-1118, ECF No. 19.  Consequently, all substantive briefing was filed in Case No. 23-1013, with the sole exception of CDM's Complaint, which was filed in Case No. 23-1118.

Motions for Judgment on the Administrative Record and denies plaintiff's and consolidated plaintiff's Motions for Judgment on the Administrative Record.

I.   **Background**

FEMA, an agency of the United States Department of Homeland Security, helps people before, during, and after disasters. In support of its mission, FEMA's Office of Response and Recovery provides survivors and communities with grants and resources to quickly respond to and recover from major disasters or emergencies declared by the President. Administrative Record at 741, ECF No. 26-1 [hereinafter AR]. FEMA's Public Assistance Program helps applicants obtain supplemental federal disaster grant assistance for "debris removal, emergency protective measures, and the repair, replacement, and restoration of disaster-damaged, publicly owned facilities . . . [and] encourages protection of these damaged facilities from future events by providing assistance for hazard mitigation measures during the recovery process." AR 741. In 2014, the Public Assistance Program started "a national effort to analyze the delivery of its program and areas for improvement," which led to the creation of Consolidated Resource Centers ("CRCs") to better process complex projects and grant applications. AR 741. Through the instant Solicitation, FEMA sought support for the Public Assistance Program through a new contract vehicle, the CRC Support Contract, to provide advisory and assistance contractor services at CRCs around the country. AR 741.

A.   **The Consolidated Resource Center Support Contract Solicitation**

On November 2, 2021, FEMA issued the CRC Support Contract Solicitation. AR 355–577. The Solicitation was issued using the United States General Services Administration's Federal Supply Schedule procedures under Federal Acquisition Regulation ("FAR") subpart 8.4 for Blanket Purchase Agreements ("BPAs"). AR 357. The Solicitation was amended three times and the final Solicitation was issued on January 6, 2022. AR 578, 647, 697. Relevant here, the initial Solicitation and each amendment contemplated a single-award BPA consisting of one base year and two one-year options. AR 357, 358, 579, 580, 648, 650, 698, 700.

The Solicitation identified four evaluation factors that would form the basis of award: (1) Relevant Experience; (2) Technical; (3) Past Performance; and (4) Price. AR 734. The stated evaluation scheme attributed varying weight to each factor:

> a. Order of Importance – Factor 1 (Relevant Experience) is significantly more important than Factor 2 (Technical). Factor 2 (Technical) is significantly more important than Factor 3 (Past Performance). Offerors will not be eligible for award if rated "Fail" on Factor 1 (Relevant Experience) or rated "Low Confidence" Factor 2 (Technical) or any of its technical subfactors. Offerors will not be eligible for award if rated "No Confidence" under Factor 3 (Past Performance). All non-price factors, when combined, are significantly) more important than Factor 4 (Price).

AR 734.

For Factor 1, Relevant Experience, the Agency would evaluate offerors' proposals to determine "if the [o]fferor possess [sic] experience that is relevant to the PA CRC requirements in terms of size, scope, complexity, type and prime contractor," with more preference given to work performed by the prime contractor.  AR 734.  The Solicitation included a list of four requirements that must be met for experience to be relevant, and the Agency would assess whether the proposal met the stated requirements.  AR 735.  The Solicitation also provided that Factor 1 would be "a pass/fail factor," meaning the Agency would not evaluate the offeror's proposal if the Agency determined that the offeror's three projects submitted do not demonstrate relevant experience.  AR 734–35.

Factor 2, Technical, was divided into three sub-factors: Sub-factor 1, Technical and Management Approach and Capabilities; Sub-factor 2, Key Personnel; and Sub-factor 3, Quality Control Plan.  AR 735–36.  The Solicitation's evaluation methodology provided that the Agency would assess the level of confidence on an adjectival scale, consisting of High Confidence, Some Confidence, or Low Confidence, that the offeror would successfully perform all requirements for Factor 2 and the related sub-factors in accordance with the Performance Work Statement.  AR 736.

For Factor 3, Past Performance, offerors were required to submit "past performance information regarding the same as or similar contracts" to determine the offeror's likelihood of successfully performing the requirements in the Performance Work Statement.  AR 736.  The Solicitation provided that "[o]fferors will be evaluated on three (3) Government and/or commercial contracts which the offeror has performed as the prime *that are recent (within the past five (5) years)*, and relevant in accordance with the Performance Work Statement."  AR 737 (emphasis added).  To assess past performance, the Agency would rate offerors' references for Relevancy, ranging from Not Relevant to Very Relevant, to measure similarity of service, complexity, dollar value contract type, and Past Performance Confidence Assessment, ranging from No Confidence to High Confidence, to measure the degree of risk of unsatisfactory performance.  AR 736–38.  Relatedly, during the first question-and-answer period, one offeror asked whether the Agency intended to use the Past Performance Information Retrieval System, which was officially retired in January 2019, for source selection purposes or use the Contract Performance Assessment Reporting System.  AR 628.  The Agency responded that, "[t]he Government will use any and all resources to evaluate past performance to include questionnaires."  AR 628.

Finally, Factor 4, Price, required information to support proposed prices, complete with Contract Line Item Numbers ("CLINs") with unit price, quantity, and extended price to match labor rates for the Firm-Fixed-Price/Time & Material type contract.  AR 738–39.  The Solicitation stated that price proposals would be evaluated separately from technical proposals and assessed for price reasonableness.

The final award would be made based on best value with trade-offs, or the most advantageous offer, price, and other factors considered.  AR 349, 639.

B.  **The Agency's Evaluation**

On December 2, 2022, the Agency received seven proposals in response to the Solicitation.[3] AR 6090. On February 13, 2023, the Agency issued an Award Document under FAR 8.405-2 explaining its award to AECOM. AR 6083–6103. The Agency's Technical Evaluation Team evaluated each proposal and collectively rated each offeror as follows:

| TECHNICAL CONSENSUS RATINGS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| VENDOR | Factor 1 Pass/Fail | Factor 2 Overall | Factor 2 Sub-Factor 1 | Factor 2 Sub-Factor 2 | Factor 2 Sub-Factor 3 | Factor 2 Sub-Factor 3 confidence Rating | Factor 3 Relevance Rating | Factor 3 Confidence Rating |
| Fluor | Pass | High | High | High | Acceptable | High | Very | Significant |
| CDM Smith | Pass | High | High | High | Acceptable | Some | Relevant | Significant |
| AECOM | Pass | High | High | High | Acceptable | High | Relevant | Significant |

AR 6090. The Agency produced an abstract of offerors' prices as follows:

| Vendor | Base | Option 1 | Option 2 | Total Proposed Price |
|---|---|---|---|---|
| AECOM | $ 109,415,741.18 | $ 104,669,017.07 | $ 107,599,749.55 | $ 321,684,507.80 |
| CDM Smith | $ 112,237,415.71 | $ 105,806,752.26 | $ 107,590,992.73 | $ 325,635,160.70 |
| Fluor | $ 124,810,144.87 | $ 117,122,520.53 | $ 120,401,951.11 | $ 362,334,616,51 |

AR 6090. The Agency then conducted a Price Analysis under FAR 15.404-1(b)(2)(i) by comparing proposed prices received in response to the Solicitation and examining variations in project unit prices. AR 6091–92. The Agency ultimately concluded that six offerors' prices were reasonable and adequate price competition existed. AR 6092; AR 6102.

---

[3] On May 16, 2022, the Agency initially awarded the contract to AECOM. AR 4696. Both Fluor and CDM challenged the award at the United States Government Accountability Office ("GAO"), arguing, *inter alia*, that the Agency improperly awarded a single-award BPA, misevaluated proposals, and conducted an erroneous best-value tradeoff. AR 4706–5032. In June 2022, the GAO dismissed both protests as academic following the Agency's Notice of Corrective Action to re-evaluate the proposals and issue a new source selection decision. AR 5033–37. In December 2022, the Technical Consensus Team reevaluated proposals and re-awarded the contract to AECOM. The Court's analysis here focuses on the Agency's latest award.

Finally, the Agency conducted a tradeoff analysis in accordance with the Solicitation's weighted evaluation scheme, examining both non-price and price factors, with greater emphasis on the non-price factors. AR 6092. Because the Agency found that AECOM presented one of the stronger non-price proposals and offered the lowest price, it served as the comparator in the tradeoff analysis to the remaining six offerors.

When comparing Fluor and AECOM, the Agency recognized that both "had strong technical proposals with Fluor's past performance (Factor 3) being slightly stronger," but concluded that "Fluor's slightly stronger past performance did not justify the price premium of $40,650,108.71" because Factor 3 weighed less than Factors 1 and 2 and "both offerors have demonstrated that they can perform work within the [Performance Work Statement] to the highest expectation of the government." AR 6093, 6095.

When comparing CDM and AECOM, the Agency found that both offerors presented equally strong technical proposals with low risk of unsuccessful performance. AR 6095, 6097. However, the Agency determined that, "with AECOM providing a slightly stronger proposal under Factor 2, subfactor 3, it would not be in the best interest of the government to pay the additional $3,950,652.90 to CDM as AECOM's proposal [was] a better value to the government." AR 6098.

The Contracting Officer ultimately determined that AECOM was a responsible offeror that presented the best value to the government. AR 6102. On February 13, 2022, the Agency notified unsuccessful offerors of the contract award to AECOM. AR 5097.

### C.     Procedural History

In February 2023, Fluor and CDM protested the issuance of the new award to AECOM at United States Government Accountability Office ("GAO"). Both protesters objected to the Agency's evaluation of quotations and the resulting best-value tradeoff, and Fluor also challenged the Agency's justification of its single-award BPA. *See* AR 5101–5293. On June 1, 2023, GAO denied both protests, finding the Agency's re-evaluation reasonable and consistent with the terms of the Solicitation, and finding untimely Fluor's the post-award challenge of FEMA's decision to issue a single award. AR 6067–81; *Fluor Federal Services, Inc.; CDM Fed. Programs Corp.*, B-420783 et al., 2023 CPD ¶ 124 (Comp. Gen. June 1, 2023).

On June 30, 2023, plaintiff Fluor filed its Complaint with this Court. *See* Fluor's Compl. On July 19, 2023, consolidated plaintiff CDM filed its Complaint with this Court. *See* CDM's Compl. On July 20, 2023, defendant-intervenor AECOM filed a Partial Motion to Dismiss Counts I, III, and IV of plaintiff Fluor's Complaint. *See* Def.-Int.'s MTD. On July 21, 2023, defendant filed the Administrative Record. On July 26, 2023, the Court consolidated Fluor's and CDM's cases. *See* July 26, 2023 Order, Case No. 23-1013, ECF No. 27; July 26, 2023 Order, Case No. 23-1118, ECF No. 19. On August 7, 2023, defendant filed a Motion to Correct the Administrative Record, ECF No. 33, which the Court granted on August 9, 2023, *see* August 9, 2023 Order, ECF No. 34.

On August 16, 2023, plaintiff Fluor filed its Motion for Judgment on the Administrative Record, *see* Fluor's MJAR, as well as its Response to AECOM's Partial Motion to Dismiss, *see* Plaintiff's Response to Defendant-Intervenor's Partial Motion to Dismiss, ECF No. 39 [hereinafter Fluor's Resp. to Def.-Int.'s MTD].  On that same day, consolidated plaintiff CDM filed its Motion for Judgment on the Administrative Record.  *See* CDM's MJAR.  On August 30, 2023, defendant filed a second Motion to Correct the Administrative Record, ECF No. 42, which the Court granted on August 31, 2023, *see* August 31, 2023 Order, ECF No. 43.

On September 12, 2023, defendant-intervenor AECOM filed both its Response and Cross-Motion for Judgment on the Administrative Record as to Fluor, *see* Def.-Int.'s Resp. to Fluor, and its Response and Cross-Motion for Judgment on the Administrative Record as to CDM, *see* Def.-Int.'s Resp. to CDM.  On that same day, defendant filed both its Response and Cross-Motion for Judgment on the Administrative Record as to Fluor, *see* Def.'s Resp. to Fluor, and its Response and Cross-Motion for Judgment on the Administrative Record as to CDM, *see* Def.'s Resp. to CDM.

On September 21, 2023, consolidated plaintiff CDM filed its Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 48 [hereinafter CDM's Reply].  On that same day, plaintiff Fluor filed its Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 49 [hereinafter Fluor's Reply].

On October 2, 2023, defendant-intervenor AECOM filed both its Reply in Support of its Cross-Motion for Judgment on the Administrative Record as to Fluor, ECF No. 50 [hereinafter Def.-Int.'s Reply to Fluor], and its Reply in Support of its Cross-Motion for Judgment on the Administrative Record as to CDM, ECF No. 51 [hereinafter Def.-Int.'s Reply to CDM].  On that same day, defendant filed both its Reply in Support of its Cross-Motion for Judgment on the Administrative Record as to Fluor, ECF No. 52 [hereinafter Def.'s Reply to Fluor], and its Reply in Support of its Cross-Motion for Judgment on the Administrative Record as to CDM, ECF No. 53 [hereinafter Def.'s Reply to CDM].

On November 3, 2023, the Court held Oral Argument.  On November 7, 2023, the Court issued an Order granting defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record and denying Fluor's and CDM's Motions for Judgment on the Administrative Record.  *See* November 7, 2023 Order, ECF No. 60.  In that Order, the Court explained that a memorandum opinion would follow, explaining in detail the Court's decision.  *Id.* at 1.  This is that opinion.  Finally, on November 8, 2023, the Court entered judgment in favor of defendant and defendant-intervenor.

## II. Standard of Review

The Tucker Act grants this Court jurisdiction over bid protest actions. 28 U.S.C. § 1491(b)(1). This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions, which may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 28 U.S.C. § 1491(b)(4) (incorporating 5 U.S.C. § 706 by reference); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The Court will "interfere with the government procurement process 'only in extremely limited circumstances,'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983)), and it will not substitute its judgment for that of the agency, *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974).

"[A] bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (collecting cases). Under the first part, the Court recognizes that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Id.* (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). The test for courts is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* at 1332–33 (internal citation omitted). If "the court finds a reasonable basis for [an] agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). When a challenge is brought under the second part, the protestor must show that the alleged violation was a "clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1333 (citation omitted). Therefore, if the agency's procurement decision lacked a rational basis or is contrary to law, the court will then "determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351; *see also Sys. Stud. & Simulation v. United States*, 22 F.4th 994, 996–98 (Fed. Cir. 2021). "In either case, however, the protestor bears the heavy burden of proving the lack of a rational basis or a violation of law by a preponderance of the evidence." *Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 735 (2007).

A party may file a motion for judgment on the administrative record requesting that the Court assess "whether the administrative body, given all disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review" pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims. *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013). On such a motion, the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record. R. Ct. Fed. Cl. 52.1; *Bannum,* 404 F.3d at 1354. The Court will then determine whether a party has met its burden of proof based on the evidence in the record. *Bannum*, 404 F.3d at 1355.

**III.     Discussion**

      **A.     Plaintiff Raised Untimely Protest Arguments.**

Defendant and defendant-intervenor argue that both plaintiffs raise untimely arguments that warrant dismissal. *See* Def.'s Resp. to Fluor at 14–15; Def's Resp. to CDM at 14–16; Def.-Int.'s MTD 3–8; Def.-Int.'s Resp. to Fluor at 8–11; Def.-Int.'s Resp. to CDM at 9–10. The Court is inclined to agree in part and finds two arguments raised by Fluor untimely.

In contract performance, time is of the essence—and the same rings true for challenging contract awards. A protester may challenge both patent and latent defects in the terms of a government solicitation. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009). But a protester that wishes to object to solicitation terms containing a patent error or clear ambiguity must do so prior to the close of the bidding process or waives its ability to raise the same objection subsequently in a bid protest action before this Court. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313–14 (Fed. Cir. 2007); *see also Land Shark Shredding, LLC v. United States*, 145 Fed. Cl. 338, 347 (2019) (finding protester waived post-award arguments that cascading preference scheme in solicitation was improper because scheme was apparent from the plain terms of the solicitation); *Telos Identity Mgmt. Sols., LLC v. United States*, 143 Fed. Cl. 787, 793 (2019) (finding protester waived post-award argument challenging the agency's intent to award single IDIQ contract as improper because the agency "repeatedly expressed its intention" to make a single award); *Voith Hydro, Inc. v. United States*, 142 Fed. Cl. 233, 237–38 (2019) (finding protester waived post-award argument that evaluation criteria were improper). This waiver rule aligns with the Tucker Act's statutory mandate to resolve timely actions expeditiously. *See* 28 U.S.C. § 1491(b)(3).

First, Fluor challenges the Agency's decision to issue a single-award BPA, averring that the FEMA's justification for a single-award BPA contravenes the Agency's own acquisition plan and the FAR's notice requirement. Fluor's Compl. at 11–13; Fluor's MJAR at 5–13. In response, defendant and defendant-intervenor argue that the Agency's justification meets the requirements set forth in the FAR, but in any event, Fluor knew of the Agency's intent to issue a single award from the outset of the procurement because it was clearly stated in the Solicitation, rendering Fluor's post-award challenge untimely. Def.'s Resp. to Fluor at 15–20; *see also* Def.-Int's MTD at 3–5; Def.-Int.'s Resp. to Fluor at 8–19.

The FAR prescribes a preference for multiple-award BPAs over single-award BPAs. FAR 8.405-3(a)(3)(i). An agency may, however, issue a single-award BPA exceeding $100 million so long as the contracting officer justifies in writing the need for a single source. FAR 8.405-3(a)(3)(ii)(A)–(D) (listing reasons that warrant a single-award BPA over a multiple-award BPA). From the start of this procurement, the Agency repeatedly expressed its intention to issue a single-award BPA. On October 25, 2021, the Agency effectuated its single-award justification, Determination to Make a Single Award Blanket Purchase Agreement, under FAR 8.405-3(a)(3)(ii)(A), noting that "[o]rders expected under the BPA are so integrally related that only a

single source can reasonably perform the work . . . because of the phased approach of the work to be accomplished" demand consistency of operations across CRCs and maximum knowledge transfer on projects. AR 332. Relatedly, each iteration of the Solicitation noted that the procurement would be conducted under "FAR 8.405-3(c)(1) Ordering from *Single-Award BPA*." AR 358, 580, 650, 700 (emphasis added). Fluor's issue with the Agency's decision to award a single BPA should have been raised prior to the close of the bidding process because the Solicitation's terms were clear and unambiguous. Indeed, Fluor's framing of its claim as a challenge to the Agency's justification and related notice requirements underlying the single-award decision—versus the terms of the Solicitation—amount to creative reasoning to circumvent the waiver rule. At the end of the day, Fluor knew, or should have known, that the Agency intended to issue a single-award BPA regardless of its challenge to the single-award or the underlying justification. *See Telos Identity Mgmt. Sols., LLC* 143 Fed. Cl. at 793. Therefore, Fluor's challenge is untimely. *Blue & Gold Fleet, L.P*, 492 F.3d at 1313–14.

Second, Fluor challenges the Agency's evaluation of Factor 3, Past Performance, claiming that the Agency failed to consider allegations against AECOM under the False Claims Act ("FCA"), which violates the "close-at-hand" doctrine that requires agencies to obtain documents in its possession and consider some information known to the evaluator. Fluor's MJAR at 19; *see Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 781 (2011) (internal citations and quotations omitted). In response, defendant and defendant-intervenor again argue that the Agency's evaluation was reasonable and followed the Solicitation's stated evaluation criteria, but that in any event, Fluor's claim is again untimely. Def.'s Resp. to Fluor at 20; *see also* Def.-Int.'s Resp. to Fluor at 20–28. The Solicitation expressly limited the relevant period for past performance to be the "past five (5) years from the issue date of this [Solicitation]," so Fluor's claim that the Agency should have considered information past the relevancy period constitutes an untimely challenge to the Solicitation's terms. Def.'s Resp. to Fluor at 20 (quoting AR 734).

The Solicitation provided a recency threshold for evaluating offerors' Past Performance: "Offerors will be evaluated on three (3) Government and/or commercial contracts which the offeror has performed as the prime that are *recent* (*within the past five (5) years*)." AR 737 (emphasis added). The record shows that the Agency followed this evaluation criteria when reviewing offerors proposals, which only included contracts from the past five years, *see* AR 3810, 3904–05, 4190, in both Technical Consensus Evaluation and the Award Document, *see* AR 5081–96, 6083–6103. The Court finds that the record demonstrates a rational basis for the Agency's evaluation and consequent contract award. Indeed, any consideration of past performance information by the Agency outside the stated recency window would be unreasonable and amount to an express violation of the stated Solicitation criteria. *See, e.g.*, FAR 15.303(b)(4) (proposals must be "evaluated based solely on the factors and subfactors contained in the solicitation"); *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003) ("*Banknote I*"), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) (holding agencies "may not rely upon undisclosed evaluation criteria in evaluating proposals" and "must make awards based on the criteria stated in the solicitation").

To be sure, the Court finds Fluor's claim—that the Agency should have considered past performance information outside the relevant time frame—as an untimely challenge of the Solicitation's terms. *Blue & Gold Fleet, L.P*, 492 F.3d at 1313–14. Fluor attempts to resuscitate its untimely claim by pointing to an answer incorporated into the Solicitation where the Agency "stated that it would rely on 'all resources' to evaluate past performance, [such that] FEMA was obligated to consider AECOM's FCA litigation." Fluor's MJAR at 20. But Fluor's argument fails for two reasons. First, Fluor misconstrues the record here. The Agency's answer to use "any and all resources to evaluate past performance" responds to a question asking *where* the Agency would extract past performance data from (i.e., the Past Performance Information Retrieval System versus the Contract Performance Assessment Reporting System), not *when* past performance information would be used. AR 628, 4836, 5523. Second, even if the Agency's answer spoke to the recency period as Fluor claims, it would create a patent ambiguity in the plain terms of the Solicitation that cannot be brought now, post-award, because the recency period of *five years* in Section 14, Evaluation Factors and Basis of Award, would clearly contradict *any period* in the Question and Answers. AR 737, 4836. Fluor's challenge here is therefore untimely and waived.

### B.     The Agency's Evaluation of Offerors Proposals Was Reasonable.

The Court has carefully considered the remainder of plaintiffs' claims, which can be summarized as challenges the Agency's evaluation and resulting contract award. Fluor's MJAR at 13–24; CDM's MJAR at 7–32. Specifically, Fluor claims that the Agency's evaluation was flawed in three ways: (1) the Agency failed to document why AECOM's proposal was worth a lower price; (2) the Agency failed to consider Fluor's strengths; (3) the Agency inflated AECOM's relevant experience.[4] Fluor's MJAR at 13–24. CDM argues, *inter alia*, that the Agency erred in (1) its evaluation of Factor 1, Relevant Experience, in connection with the best-value tradeoff decision, (2) its evaluation of Factor 2, Technical Approach, Subfactor 3, Quality Control, and (3) its implied duty to treat offerors fairly and honestly. CDM's MJAR at 7–33.

Defendant and defendant-intervenor conversely argue that the Agency's evaluation was reasonable and in accordance with the stated evaluation criteria. In response to Fluor, defendant contends that plaintiff's arguments "only serve to confuse and misrepresent the evaluation criteria and do not demonstrate why FEMA's broad discretion of assigning ratings should be disturbed." Def's Resp. to Fluor at 21–24. In response to CDM, defendant explains how the Agency followed the stated evaluation criteria and states, *inter alia*, that plaintiff "fails to carry its heavy burden of showing that FEMA unreasonably evaluated quotations." Def.'s Resp. to CDM at 16–29. In response to CDM's allegation of breach regarding the implied duty to consider all bids fairly and honestly, defendant also argues that CDM has not overcome the high presumption of good faith entitled to the government. *Id.* at 30–31. In response to both plaintiffs' objection that the Agency conducted a flawed best-value tradeoff analysis, defendant

---

[4]     Fluor also claims that the Agency failed to consider "close-at-hand" information that would impact the AECOM's past performance, but as discussed in Section III.A. *supra*, this argument is untimely and waived. Fluor's MJAR at 19–24.

- 11 -

argues that Fluor's and CDM's challenges ultimately amount to no more than mere disagreement with the Agency's reasoned evaluation judgments because they fail to overcome the great discretion afforded to these decisions by the Court. Def.'s Resp. to Fluor at 22, 26, 29; Def.'s Resp. to CDM at 23, 24, 27, 30. Defendant-intervenor argues much the same as defendant. Def.-Int. Resp. to Fluor at 20–30; Def.-Int. Resp. to CDM at 6–22.

Under the FAR, an award decision for a BPA should include "the evaluation methodology used in selecting the contractor, the rationale for any tradeoffs in making the selection, and a price reasonableness determination for services requiring a statement of work." FAR 8.405-3(a)(7)(viii). When a protester challenges an agency's evaluation, including an evaluation of a BPA award, the Court "will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statues and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004). In reviewing an agency's evaluation and resulting award, "[i]t is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004); *see also E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). The wide discretion that this Court affords to contracting officers "extends to a broad range of procurement functions, including the determination of what constitutes an advantage over other proposals." *Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 82 (2013). As the Federal Circuit held, "[t]he greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Galen Med. Assocs., Inc.*, 369 F.3d at 1330 (quoting *Burroughs Corp. v. United States*, 223 Ct. Cl. 53, 64 (1980)). "[A]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 692 (2014) (quoting *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 384 (2003)). As this court recently held, the Court is "especially cognizant to not disturb the agency's determination when the disappointed bidder's argument does nothing more than recite what was presented to the agency and ask the Court for a second opinion (without fleshing out why that information renders the agency's determination wholly unreasonable)." *DigiFlight, Inc. v. United States*, 167 Fed. Cl. 158, 165 (2023).

Upon careful review of the record, it is clear to the Court that plaintiff's allegations amount to mere disagreements with the Agency's discretionary determinations. The Technical Evaluation Consensus created by the Technical Evaluation Team and the Award Document produced by the Contracting Officer illustrate a thorough review of each offeror's proposal through factor-by-factor analysis, price reasonableness analysis, and a tradeoff analysis of all eligible offerors against AECOM. AR 5038–96; 6083–6103. Such reasoned documentation in the record supports the standard required under the FAR and precedent before this Court for

BPAs.  As nothing in the record supports plaintiff's assertions that the Agency's evaluation under individual factors or the best-value tradeoff analysis was arbitrary, capricious, or an abuse of discretion, the Court will not endeavor to overturn the Agency's evaluation and set aside the contract award.

### C. Prejudice and Injunctive Relief

Finally, Fluor and CDM allege that the Agency's evaluation errors caused a flawed tradeoff analysis that resulted in an improper award to AECOM, and but for these errors, they would have had a substantial chance at award.  Fluor's MJAR at 19; CDM's MJAR at 7.  But as previously discussed, the Agency is afforded vast discretion in its best-value decision, and "this Court is generally loath[] to disturb a best-value award so long as the agency documents its final award decision and includes the rationale for any business judgments and tradeoffs made.  So long as there exists a rational connection between the facts found and the choice made, the Court will not set a procurement decision aside."  *Perspecta Enter. Sols. LLC v. United States*, 151 Fed. Cl. 772, 788 (2020) (internal citations and quotations omitted).  Because the Court is not persuaded by plaintiffs' contentions that the Agency conducted a flawed evaluation and award, the Court finds that plaintiffs were not prejudiced by the alleged procurement errors.

Both plaintiffs seek injunctive relief from this Court to set aside the award to AECOM.  Fluor's MJAR at 25–26; CDM's MJAR at 34–37.  Defendant and defendant-intervenor argue that plaintiffs failed to meet the burden necessary for injunctive relief.  Def.'s Resp. to Fluor at 29–30; Def.'s Resp. to CDM at 31–32; Def.-Int.'s Resp. to Fluor at 3, 7; Def.-Int.'s Resp. to CDM at 3, 6.  The Tucker Act provides this Court with authority to award injunctive relief in bid protests if proper.  *See* 28 U.S.C. § 1491(b)(2).  Injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *See Samsara Inc. v. United States*, 166 Fed. Cl. 457, 465 (2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "When analyzing whether a permanent injunction is proper, a court must analyze whether, as it must, the plaintiff has succeeded on the merits of the case."  *Perspecta Enter. Sols. LLC*, 151 Fed. Cl. at 788 (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)) (internal quotations omitted).  As discussed above, plaintiffs have not demonstrated success on the merits of its bid protest; therefore, plaintiffs' request for injunctive relief fails.

### IV. Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record and consolidated plaintiff's MOTION for Judgment on the Administrative Record are hereby **DENIED**.  Defendant's and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are hereby **GRANTED**.  Defendant-intervenor's PARTIAL MOTION to Dismiss is hereby found as **MOOT**.

**IT IS SO ORDERED.**

                                          s/ *Loren A. Smith*
                                          Loren A. Smith,
                                          Senior Judge